Harry B. Frank, J.
In this consolidated action, plaintiff seeks in action No. 1 a reformation of a contract of dissolution and a bill of sale executed in connection therewith on March 16, 1956. In action No. 2 plaintiff seeks to declare a lease entered into on October 25, 1957, between the defendants Joseph Liebman and Dyanafield Realty Corporation null and void and that the defendants be enjoined and restrained from entering into any other lease for premises known as 98-02 Queens Boulevard for a period of five years from March 15,1956. Action No. 1 arises out of a dissolution of a partnership which formerly existed between the plaintiff and the defendant, Joseph Liebman. They had been engaged in the operation of a chain of three kosher delicatessen restaurants and a kosher provision route. In the division of the partnership assets pursuant to the dissolution agreement of March 16,1956, the partners evaluated their property as follows:
A. Store at 98-02 Queens Boulevard — $60,000
B. Store at 179-08 Union Turnpike — $75,000
C. Riverdale Delicatessen and Restaurant, Inc. — $75,000
D. Joseph Liebman Provision Co., Inc. route — $10,000
The agreement provided for the taking of these assets in kind, so that the defendant Liebman received the Riverdale Delicatessen and Restaurant, Inc. and the Joseph Liebman Provision Co., Inc. route and the plaintiff received the store at 179-08 Union Turnpike and 98-02 Queens Boulevard. It is the store located at 98-02 Queens Boulevard that is the subject matter of this litigation.
*616 It is contended by the plaintiff that the dissolution agreement of March 16,1952, and the bill of sale executed on the same day failed to contain a restrictive covenant which was agreed upon, that such omission was due to mutual mistake of the parties. The restrictive covenant was to be in the following form:
“ To have and to hold the same unto the said party of the second part, his executors, administrators, successors and assigns forever. And I do for myself, my heirs, executors and administrators, covenant and agree, to and with the said party of the second part, to warrant and defend the sale of the aforesaid delicatessen and restaurant business, etc., hereby sold unto the said party of the second part, his executors, administrators, successors and assigns, against all and every person and persons whomsoever.
‘ ‘ And I do further covenant and agree, to and with the said party of the second part, that I will not re-establish, re-open,, be engaged in, nor in any manner whatsoever become interested, directly or indirectly, either as employee, as owner, as partner, as agent, or as stockholder, director or officer of a Corporation, or otherwise, in any business, trade or occupation similar to the one hereby sold, within the area bounded by five city blocks on the north, south, east and west of the demised premises, for a term of five years from the date of these presents.”
The plaintiff has testified in support of his contention and has been corroborated by his brother and two members of the Bar who represented him in the preparation of the agreements and the closing in connection with the same. The defendant and his attorney have testified in contradiction to the evidence offered by the plaintiff. Their testimony concerning this transaction was that no mistake was made, that while there had been negotiations and discussions with respect to restrictive covenants to apply to the three stores in question and to the provision route, that these negotiations never terminated in an agreement for such restrictive covenants. In connection with the Biverdale store, a different situation was presented in that this was the sale of a stock interest from one partner to the other, so that the restrictive covenant that was to be employed was that used in the assignment of stock with a restriction attaching thereto.
There was further testimony by the defendants that continuing negotiations were had and there was rearrangement at times as to which partner was to take the stores and the route in question, that at first Garrison was to take the provision route, but that he insisted that defendant Liebman would have to sign a *617 réstrictive covenant, to which defendant Liebman objected on the ground that his son was the one who actually operated the route and that to enter into such a restrictive covenant would prevent him from earning a living in this business for a period of five years. The parties thereupon changed their agreement when defendant Liebman stated that he would take the route in the distribution of the partnership assets and would not insist on a restrictive covenant. At this point Garrison stated that he feared no competition from defendant Liebman and since he was willing to take 'the route without a restrictive covenant, he did not seek one in connection with those assets he was taking. It was thereupon agreed that Liebman would take the kosher provision route and the Riverdale Delicatessen and Restaurant, Inc. and that the Garrisons would take the stores located at 179-08 Union Turnpike and 98-02 Queens Boulevard. Further testimony was offered that all negotiations as to the restrictive covenant were then terminated.
The parties then on March 12,1956, entered into an agreement which provided for a closing of the transaction on March 16, 1956. At the closing date, March 16, 1956, bills of sale and the stock agreement were executed without any reference to any restrictive covenants.
However, it does appear that the attorney representing the defendant Liebman was cognizant of the importance of such restrictive covenants, and that at all times, even as late as March 16,1956, the date of closing, held out hope that such agreements would be entered into since he considered it a wise practice to protect his client. However, when the Garrisons asserted that they did not want a restrictive covenant because they did not consider Liebman any competition, and Liebman responded that if they didn’t think he was competition he did not want one either, defendant’s attorney discontinued his efforts to procure such restrictive covenants.
The court is not satisfied that the plaintiff on the question of fact has sustained the burden of proof. This court would not be justified in affording the plaintiff the relief sought herein unless the plaintiff established his right to such relief by clear, positive and convincing evidence and reformation may not be granted upon the probability nor mere preponderance of evidence but only upon , a certainty of error. (Amend v. Hurley, 293 N. Y. 587.) While it is distasteful to this court to have to decide an issue of this type, where testimony has been offered by respective attorneys and to determine which version is a correct one, it is constrained on the law and facts on the issues herein involved to find for the defendant.
*618 Action No. 2 is brought by Leo Garrison against Joseph Liebman and Dyanafield Realty Corporation, the landlord of premises known as 98-02 Queens Boulevard, that a declaration be made that the lease between the two defendants entered into on October 25, 1957, be declared null and void and that the defendants and each of them and their agents be restrained from entering into any lease for premises known as 98-02 Queens Boulevard for a period of five years from March 16, 1956, must be dismissed since the plaintiff in order to succeed herein would have to establish that there was a restrictive covenant entered into by Liebman restricting him from entering into business at that location or in an area within five blocks in all directions from said location. He would further have to establish that the existence of such restrictive covenant was known to the defendant Dyanafield Realty Corporation at the time of the execution of the lease. Since in fact the court has found that no such restrictive covenant or agreement therefor did exist, the action must fall of its own weight. While the court deplores the actions of the defendant Liebman in negotiating for and leasing the premises at 98-02 Queens Boulevard, it cannot be the keeper of his conscience. In his desire to injure the plaintiff because of the obvious bad feeling engendered by the dissolution of their partnership, he has made the defendant Dyanafield Realty Corporation the beneficiary of a rental which to the court seems too heavy a burden to be borne in the operation of a delicatessen. However, the court’s feeling in this regard does not affect the legal problem at hand. Liebman had the legal right to negotiate for these premises since he was under no legal restriction not to do so. The morality of the situation is for his conscience. All the motions on which the court heretofore reserved decision are denied. The complaints are dismissed on the merits.
The plaintiff shall have 10 days, after service upon him by the defendant of a copy of the judgment with notice of entry, to execute the proposed lease Avith the Dyanafield Realty Corporation. The above constitutes the decision of the court pursuant to section 440 of the Civil Practice Act.
Submit decree and judgment in accordance with this decision.